UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **MACKENZIE SHRUM,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**BIG LOTS STORES, INC., LOHIA GROUP** )<br>**OF INDUSTRIES a/k/a LOHIA BUSINESS** )<br>**GROUP a/k/a LOHIA GROUP, DESIGNCO** )<br>**OVERSEAS PRIVATE LIMITED a/k/a** )<br>**DESIGNCO INDIA a/k/a DESIGNCO, and** )<br>**BUREAU VERITAS CONSUMER** )<br>**PRODUCTS SERVICES, INC.,** )<br>)<br>**Defendants.** ) | Case No. 3:14-cv-03135-CSB-DGB |

## **OPINION**

This case is before the court for ruling on the Motion to Dismiss Plaintiff's Amended Complaint (#6) filed by defendant Bureau Veritas Consumer Products Services, Inc. (BVCPS). This court has carefully considered the arguments of and the documents provided by the parties. Following this careful and thorough review, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (#6) is GRANTED.

FACTS

This is a products-liability case. Mackenzie Shrum (Plaintiff), a minor, filed a Complaint (#1) on May 6, 2014,[1] alleging that, on May 18, 2013, a Mosaic Glass Tabletop Torch (torch) that her father, Jarrod Shrum, bought along with citronella fuel from defendant Big Lots

---

[1] Plaintiff filed an amended complaint (#3) on May 22, 2014.

exploded when she tried to extinguish its flame by blowing on the wick, covering her with burning fuel and causing her to suffer third degree burns to forty percent of her body.

Plaintiff states that defendants Lohia Group of Industries and Designco Overseas Private Limited (together, Designco) designed, manufactured, labeled, supplied, and distributed the torch, while Big Lots purchased for resale, labeled, marketed, distributed, and sold the torch. Plaintiff only alleges that BVCPS tested the torch for safety and compliance prior to its labeling, marketing, importation, distribution, sale, and resale. Plaintiff is asserting the following causes of action against Designco, Big Lots, and BVCPS: (1) strict products liability, design defect; (2) strict products liability, manufacturing defect; (3) strict products liability, marketing defect; and (4) negligence. Plaintiff is also asserting a cause of action against Designco and Big Lots for breach of implied warranty.

Plaintiff is a resident and citizen of Illinois. Big Lots is an Ohio corporation that has its headquarters and principal place of business in Ohio. Lohia Group of Industries and Designco Overseas Private Limited are India corporations that have their principal place of business in India. BVCPS is a Massachusetts corporation that has its headquarters and principal place of business in New York. This court sits in diversity.

BVCPS has over 100 offices and laboratories around the world and a presence in every major sourcing and selling territory. It performs product inspection, product certification, and factory assessment services, but its main business is the laboratory testing of pre-production samples of consumer products to client-specified standards. BVCPS' primary laboratory is in New York, but it has a second laboratory in Massachusetts.

BVCPS filed a Motion to Dismiss (#6) pursuant to Federal Rule of Civil Procedure 12(b)(2), a Brief in Support (#7), and an Affidavit in Support (#9) on July 7, 2014. On

September 10, 2014, Plaintiff filed a Response to Motion to Dismiss (#26) and Memorandum in Opposition to Motion to Dismiss (#27), with attached exhibits. On September 17, 2014, BVCPS filed a Motion for Leave to Reply to Plaintiff's Opposition to Motion to Dismiss (#28) and Brief in Support (#29), followed by a Reply in Further Support of Motion to Dismiss (#30) on September 29, 2014. Plaintiff then filed a Motion for Leave to File Surresponse (#31) on October 8, 2014, and a Surresponse to Motion to Dismiss (#33) on October 31, 2014. An evidentiary hearing has not been held. Instead, both parties have submitted affidavits supporting their positions.

BVCPS' Contacts with Illinois

BVCPS has numerous contacts with Illinois. In determining BVCPS' contacts, this court will accept as true BVCPS' uncontested assertions relating to those contacts and draw all inferences in Plaintiff's favor if BVCPS contests relevant facts. *N. Grain Mktg.,* 743 F.3d at 491 (citations omitted); *Cent. States*, 440 F.3d at 878; *Crawley*, 2006 WL 2331143, at *1 (citations omitted).

BVCPS has the following contacts with Illinois:

1. BVCPS tests products manufactured in Illinois. The torch, however, was not manufactured in Illinois.
2. BVCPS maintains a registered agent in Illinois for the service of process.
3. BVCPS inspects products in Illinois. In 2013, BVCPS conducted 0.98% of all the inspections it performed in Illinois. During the first seven months of 2014, it conducted 0.39% of all of the inspections it performed in Illinois.

4. BVCPS performs factory assessments in Illinois. In 2013, BVCPS performed 1.41% of all the assessments it conducted in Illinois. During the first seven months of 2014, it performed 3.33% of all of the assessments it conducted in Illinois.

5. BVCPS filed Form BCA 13.15—an application to transact business in Illinois—with the Illinois Secretary of State, although it could have filed Form BCA 4.25, which specifically states that a foreign corporation is "not transacting business in the State of Illinois at this time."

6. BVCPS employs several Illinois residents. As of the first quarter of 2013, BVCPS had three Illinois employees who were collectively paid approximately $423,000. The three employees were an account manager who left BVCPS for another job in July 2013, BVCPS' president and director who has been stationed overseas for more than five years, and an information systems technician who does not interact with BVCPS' clients. As of the first quarter of 2014, BVCPS had two employees in Illinois who were collectively paid approximately $343,000. The decrease in employees and gross payroll expenses is the result of the account manager leaving for other employment.

7. In the process of pursuing new clients, BVCPS solicits business in Illinois. Illinois clients generated 5.2% of BVCPS' total revenue in 2013 and 4.1% of BVCPS' total revenue for the first five months of 2014.

8. Big Lots has designated BVCPS as its testing provider and imposes on it estimated testing turnaround times.

9. The Massachusetts Secretary of the Commonwealth has on file a UCC Form 1 stating that a secured party claims a security interest in imaging equipment used by BVCPS in Downers Grove, Illinois.

10. BVCPS is identified as doing business on several public websites that are accessible in Illinois. On one website, BVCPS has a brochure containing a world map identifying an office in Chicago, Illinois.

11. While Plaintiff claims, Big Lots admits, and BVCPS denies it, this court will assume that BVCPS tested the type of torch in question.

ANALYSIS

BVCPS' argues that it should be dismissed from the case because this court lacks personal jurisdiction over it. Plaintiff disagrees.

I. STANDARD

Motion to Dismiss

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure challenges whether it is consistent with due process for a court to assert personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). A complaint does not need to include facts demonstrating personal jurisdiction; however, when a defendant challenges personal jurisdiction, the plaintiff bears the burden of proving that it exists. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citations omitted). Where, as here, a determination of jurisdiction is based on the submission of written materials instead of an evidentiary hearing, a plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* (citations and internal quotation marks omitted); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In determining whether the plaintiff has satisfied this standard, a court must resolve all relevant factual disputes in the plaintiff's favor and "read the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff. *N.*

*Grain Mktg.,* 743 F.3d at 491 (citations omitted); *Cent. States, Se. and Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 878 (7th Cir. 2006) (citations and internal quotation marks omitted). A court may, however, "accept as true those facts presented in defendant's affidavit that remain uncontested." *Crawley v. Mariott Hotels, Inc.*, No. 05-CV-05805, 2006 WL 2331143, at *1 (N.D. Ill. Aug. 10, 2006) (citing *Purdue*, 338 F.3d at 783; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997)).

Personal Jurisdiction

In a diversity-jurisdiction case such as this, a court will have personal jurisdiction over a defendant if the plaintiff files a waiver of service or serves summons on a defendant and "the defendant is subject to the jurisdiction of a court . . . in the state where the district court is located—here, Illinois." *N. Grain Mktg.,* 743 F.3d at 491 (citing Fed. R. Civ. P. 4(k)(1)(A)). In this case, service is not at issue. However, BVCPS claims that it would not be subject to the jurisdiction of Illinois courts.

In order to determine whether BVCPS would be subject to the jurisdiction of Illinois courts, this court must first turn to Illinois' long-arm statute. The Illinois long-arm statute permits its courts to exercise jurisdiction for any reason permitted by the Illinois and United States Constitutions. 735 Ill. Comp. Stat. 5/2-209 (a)(2), (b)(4), (c) (West 2014). Because of this, the due process requirements and the Illinois long-arm statute are coextensive. *Madison Miracle Prods., LLC v. MGM Distribution Co.*, 978 N.E.2d 654, 668 (Ill. App. Ct. 2012). Therefore, Illinois' long-arm statute will be satisfied when due process concerns are satisfied. *Id.*

The Illinois and Federal Constitutions' due process guarantees "are not necessarily coextensive." *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013). To the extent that the tests diverge, "the Illinois constitutional standard is likely more restrictive than

its federal counterpart." *Id*. Consequently, if a defendant is not subject to personal jurisdiction under the federal constitutional standard, a court "need not worry whether jurisdiction is also proper under the Illinois Constitution." *Id*. Accordingly, this court will base its determination of jurisdiction on whether exercising personal jurisdiction over BVCPS comports with federal due process requirements.[2]

Under the federal due process requirements, personal jurisdiction may be exercised if the court has either general or specific personal jurisdiction. *Id.* General jurisdiction requires that a defendant's contacts with a forum state be sufficiently "'continuous and systematic' as to render [them] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citations omitted); *N. Grain Mktg.*, 743 F.3d at 492 (citations omitted); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). "Specific jurisdiction requires that the plaintiff's cause of action relate [directly] to the defendant's contact with the forum." *KM Enters.,* 725 F.3d at 732-33 (citations omitted); *see also N. Grain Mktg.*, 743 F.3d at 492 (citations omitted).

In order for this court to have personal jurisdiction over BVCPS, it must conclude that either specific or general jurisdiction exists. Such jurisdiction must be "determined as of the date of the filing of the suit." *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002); *see Cent. States*, 440 F.3d at 877.

---

[2] Plaintiff's jurisdictional arguments are based on BVCPS committing a tortious act in Illinois and "doing business" within the State: either action would bring BVCPS under Illinois courts' jurisdiction under 735 Ill. Comp. Stat. 5/2-209 (a)(2), (b)(4). However, "[t]he effects of an alleged tort are part of, not a substitute for, the analysis of a defendant's minimum contacts with the forum." *United States v. Kellogg Brown & Root Servs., Inc.*, No. 4:12-CV-4110-SLD-JAG, 2014 WL 4948136, at *5 (C.D. Ill. Sept. 30, 2014) (citing *Medallion Prods., Inc. v. H.C.T.V., Inc.*, No. 06-C-2597, 2007 WL 3085913, at *6 (N.D. Ill. Oct. 18, 2007); *see also Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985). And the long-arm statute's "doing business" standard is "virtually identical to the federal requirement for general personal jurisdiction that a party maintain continuous and systematic business contacts with the forum." *Cent. States, Se. and Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 530 F. Supp. 2d 1008, 1016 (N.D. Ill. 2008). Therefore, Plaintiffs arguments are adequately addressed by this court's analysis of whether exercising general or specific personal jurisdiction over BVCPS would comport with federal due process requirements.

## III. SPECIFIC JURISDICTION

Plaintiff asserts that this court has specific jurisdiction over BVCPS because BVCPS committed a tortious act within Illinois, since the state in which Plaintiff's injury occurred is the state in which the tort occurred. BVCPS, however, maintains that this court lacks specific jurisdiction because Plaintiff's claims against BVCPS do not arise from BVCPS' contacts with Illinois and the Seventh Circuit has abrogated the line of cases upon which Plaintiff relies. This court agrees with BVCPS.

In determining whether there are sufficient minimum contacts to create specific jurisdiction, courts "focus[] on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "Specific jurisdiction requires that the plaintiff's cause of action relate [directly] to the defendant's contact with the forum." *KM Enters.,* 725 F.3d at 732-33 (citations omitted); *see also N. Grain Mktg.*, 743 F.3d at 492 (citations omitted). Such jurisdiction exists if: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg.*, 743 F.3d at 492 (quoting *Tamburo*, 601 F.3d at 702) (internal quotation marks omitted). Nonetheless, a court's exercise of specific jurisdiction cannot violate "traditional notions of fair play and substantial justice." *Id.* (citing *Tamburo*, 601 F.3d at 702). That is, the minimum contacts must "make personal jurisdiction reasonable and fair under the circumstances." *RAR*, 107 F.3d at 1277.

*A. BVCPS Has No Claims-Related Contacts With Illinois.*

While BVCPS maintains multiple contacts with Illinois, none of those contacts are related to Plaintiff's claims. A defendant's contacts with a forum state are not all relevant to determining whether a plaintiff's claims relate to or arise out of a defendant's contacts; only those contacts that "bear on the substantive legal dispute between the parties or relate to the operative facts of the case" are relevant. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009); *see also uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 429 (7th Cir. 2010); *RAR*, 107 F.3d at 1277-78. Thus, the plaintiff's cause of action "must *directly arise* out of the specific contacts between the defendant and the forum state." *GCIU*, 565 F.3d at 1024 (emphasis in original) (citation and internal quotation marks omitted).

Despite the laundry list of contacts that BVCPS maintains with Illinois, no contact is relevant to Plaintiff's claims. Plaintiff admits that BVCPS had no involvement in the labeling, marketing, distribution, sale, and resale of any torch. Therefore, BVCPS' alleged tortious actions would be in its testing of the torch and its communications of the results with its co-defendants, making only those contacts associated with those actions relevant.

First, BVCPS' assertion that no communications over any testing on the torch occurred in Illinois is uncontroverted and must therefore be taken as true. As for the testing, Plaintiff's claim that BVCPS tested the type of torch in question must be taken as true. However, that does not create a contact with Illinois because, as Plaintiff concedes, that testing occurred outside of the United States prior to any torch's importation. And BVCPS' assertions that it never tested the particular torch injuring Plaintiff and that none of BVCPS' employees residing in Illinois were involved in any testing are uncontroverted and must be taken as true. Accordingly, no claims-related conduct connects BVCPS to Illinois.

B. *BVCPS Has Not Purposefully Directed Its Activities At or Purposefully Availed Itself of the Privilege of Conducting Business in Illinois.*

Even if, in testing the torch, BVCPS had contacts with Illinois, BVCPS did not purposefully direct its suit-related conduct to Illinois or purposefully avail itself of the privilege of conducting business in Illinois. Due process requires that a "defendant's suit-related conduct" create a sufficiently "substantial connection with the forum State" that it is "reasonable for the defendant to anticipate that he could be haled into court there." *Walden*, 134 S. Ct. at 1121; *N. Grain Mktg.*, 743 F.3d at 492 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). For there to be a "substantial connection," the relationship between the defendant and the forum State "must arise out of contacts that the defendant *himself* creates." *Walden*, 134 S. Ct. at 1122 (emphasis in original) (quoting *Burger King*, 471 U.S. at 475) (internal quotation marks omitted). Accordingly, contacts between a forum state and a third party or plaintiff—no matter how significant—cannot satisfy minimum contacts. *Walden*, 134 S. Ct. at 1122 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)); *see Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *World-Wide Volkswagen Corp.*, 444 U.S. 286, 298 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253-54 (1958).

Moreover, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen*, 444 U.S. at 295. In products liability cases, "it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice,'" and, "as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-88 (2011). When, as in *World Wide Volkswagen*, products end up in a state due to "the 'unilateral activity' of a third party, rather

than the defendant's distribution scheme," the scenario will doom the plaintiff's case. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 551 (7th Cir. 2004) (citations omitted).

Here, BVCPS did not test the torches in Illinois. And BVCPS had no control over where, or even if, the torches would be distributed or sold because it was not involved in the torch's labeling, marketing, distribution, sale, or resale. Rather, the torch in question was in Illinois because Designco and Big Lots distributed it to Illinois and Big Lots sold it there. Consequently, the torches' presence in Illinois was entirely the result of the unilateral actions of third parties. And, even if BVCPS knew that the torches would be distributed and sold, it would be difficult for it to foresee that the torches would end up in Illinois, as opposed to any other state or even another nation, because Designco is a large, foreign export company and Big Lots is a multinational corporation with stores nationwide. Further, there is no indication that BVCPS tested the torches to meet any Illinois-specific standards. In any event, foreseeability was foreclosed because BVCPS did not know that the torches would even be sold or distributed. Accordingly, BVCPS did not purposefully direct its suit-related conduct to Illinois or purposefully avail itself of the privilege of conducting business in Illinois.

*C. Plaintiff's Injury in Illinois Cannot Confer Jurisdiction.*

This court is also not persuaded by Plaintiff's claim that it has jurisdiction over BVCPS because BVCPS performed a tortious act or omission that injured Plaintiff in Illinois. Specific jurisdiction's guiding principles apply even in the case of a tortfeasor. *Walden*, 134 S. Ct. at 1123; *Wallace*, 778 F.2d at 395; *Kellogg Brown*, 2014 WL 4948136, at *5 (citing *Medallion Prods.*, 2007 WL 3085913, at *6) ("The effects of an alleged tort are part of, not a substitute for, the analysis of a defendant's minimum contacts with the forum."). As the Supreme Court unanimously held in *Walden v. Fiore*, the basis for jurisdiction is a defendant's intentional

conduct that creates requisite contacts with the forum state. 134 S. Ct. at 1123 (citations omitted). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125. And, when the Seventh Circuit addressed the question of "whether harming a plaintiff in the forum state creates sufficient minimum contacts," the court held that "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (citations omitted). In other words, "[e]xperiencing the effects of an injury in a forum on its own is insufficient under a tort theory absent 'something more directed at that [jurisdiction].'" *Kellogg Brown*, 2014 WL 4948136, at *5 (citing *Tamburo,* 601 F.3d at 706).

As the Supreme Court and Seventh Circuit have made clear, then, regardless of whether Plaintiff was harmed in Illinois, Plaintiff cannot be the sole link between BVCPS and Illinois. *See Walden*, 134 S. Ct. at 1123; *Advanced Tactical*, 751 F.3d at 802. Therefore, Plaintiff cannot rely upon prior cases holding that courts in a state where a tort and injury occur have jurisdiction over tortfeasors. *See, e.g., Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997); *Russell v. SNFA*, 965 N.E.2d 1 (Ill. App. Ct. 2011), *aff'd*, 987 N.E.2d 778 (Ill. 2013). As an Illinois state appellate court has recognized, such arguments are "completely without merit" given both *Walden* and the abrogation of *Janmark* recognized by *Advanced Tactical*. *Stoller v. Herbert*, No. 1-12-2876, 2014 WL 3953933, at*3 (Ill. App. Ct. Aug. 13, 2014) (unpublished). It is therefore unsurprising that Plaintiff eventually concedes that her residence, standing alone, does not confer jurisdiction. Since BVCPS has no claims-related contacts with Illinois, Plaintiff's residence stands alone and is an insufficient basis to confer specific jurisdiction upon this court.

Because no special rule applies when torts are involved, BVCPS never purposefully directed claims-related activities at Illinois nor purposefully availed itself of the privilege of conducting business in Illinois, and no claims-related conduct connects BVCPS to Illinois, this court cannot exercise specific personal jurisdiction over BVCPS.

## IV.  GENERAL JURISDICTION

Plaintiff also argues that this court has general jurisdiction over BVCPS because, as can be seen by BVCPS' contacts with Illinois, BVCPS is doing business in a continuous and systematic fashion in Illinois. BVCPS, however, argues that it does not have sufficient contacts to allow this court to exercise general jurisdiction because it: (1) is headquartered in New York and incorporated in Massachusetts; (2) has no current office in Illinois and at most maintained a single employee at another company's office long before the Plaintiff filed suit; (3) has no real property in Illinois; (4) only employs two Illinois residents: one is stationed overseas; the other never interacts with clients; (5) maintains a website primarily for information purposes; (6) does not advertise its services specifically in Illinois; and (7) conducts only a limited amount of business in Illinois. This court agrees with BVCPS.

The general jurisdiction threshold is "high" and "'considerably more stringent' than that required for specific jurisdiction." *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) (quoting *Purdue,* 338 F.3d at 787); *Tamburo*, 601 F.3d at 701. Defendants are subject to general jurisdiction—and can therefore be haled into court for any action, even one unrelated to a defendant's contacts with a forum state—if their contacts with a state are sufficiently "'continuous and systematic' as to render [them] essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (citations omitted); *N. Grain Mktg.*, 743 F.3d at 492 (citations omitted); *see also Daimler*, 134 S. Ct. at 751. This inquiry is not analogous to determining

whether a defendant's "in-forum contacts can be said to be in *some* sense 'continuous and systematic.'" *Daimler*, 134 S. Ct. at 761 (emphasis added) (citations omitted). While a business is deemed at home in its place of incorporation and principal place of business, beyond these locations, "contacts must be sufficiently extensive and pervasive to approximate physical presence." *Abelesz*, 692 F.3d at 654 (citing *Goodyear*, 131 S. Ct. at 2853-54); *Tamburo*, 601 F.3d at 701 (citations omitted). However, even physical presence may not be sufficient to exercise personal jurisdiction over corporations because "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Daimler*, 134 S. Ct. at 762 & n.20. Rather, a court must assess a corporation's entire activities—nationwide and worldwide—and cannot deem a corporation to be "at home" in every place they operate. *Id*. To be sure, mere "isolated or sporadic contacts" or maintaining a public website certainly cannot, without more, establish general jurisdiction. *Tamburo*, 601 F.3d at 701 (citations omitted).

Although BVCPS' contacts with Illinois are fairly extensive and deliberate, they do not satisfy the general jurisdiction standard because this court must assess the entirety of BVCPS' activities—not just the magnitude of its contacts with Illinois—in determining general jurisdiction. In *Daimler AG v. Bauman*, 134 S. Ct. at 760-762, the U.S. Supreme Court unanimously held that a company that was not incorporated in a state and did not have its principal place of business there was not subject to general jurisdiction, even were it to impute to the corporation its subsidiary's extensive contacts with the state. These contacts included having multiple facilities throughout the state, "continuous[ly] interacti[ng] with customers throughout" the state, and "direct[ly] distribut[ing] . . . thousands of products accounting for billions of dollars in sales." *Id.* at 752; *id*. at 764 (Sotomayor, J., concurring). Like the corporation in *Daimler*, BVCPS is neither incorporated in the forum state nor has its principal place of business

14

there. And compared to the contacts of the corporation in *Daimler*, BVCPS' contacts with Illinois are slim.

First, BVCPS has well over 100 offices and laboratories throughout the world, but it has no physical presence or office in Illinois. BVCPS does not own any real property in Illinois. While its online brochure contains a world map identifying an office in Chicago, Illinois, BVCPS states that it actually has no office there. Plaintiff does not contravene this assertion. And, while BVCPS' webpage listed a consulting office for BVCPS in Lisle, Illinois, when Plaintiff filed suit, the office actually belonged to an affiliated company and BVCPS' tie to that office—a sole employee—had long left its employ. But, even if this office were imputed to it, BVCPS would have less than one percent of its physical facilities located in Illinois.

Second, BVCPS has only an agent for the service of process in Illinois and two Illinois residents in its employ. BVCPS' maintenance of an agent for the service of process "does not rise to the level of 'continuous and systematic' contacts needed for the court to exercise general jurisdiction." *Rawlins*, 2014 WL 1657182, at *5; *see also Crochet v. Wal-mart Stores, Inc.*, Civ. No. 6:11-01404, 2012 WL 489204, at *4 (W.D. La. Feb. 13, 2012); *Davis v. Quality Carriers, Inc.*, Nos. 08-4533(SRC), 08-6262(SRC), 2009 WL 3335860, at *3 (D.N.J. Oct. 15, 2009); *Hodges v. Deltic Farm & Timber Co., Inc.*, Civ. A. No. 90-3998, 1991 WL 42577, at *2 (E.D. La. Mar. 28, 1991); *Palmer v. Kawaguchi Iron Works, Ltd.*, 644 F. Supp. 327, 331 (N.D. Ill. 1986). As for BVCPS' employees, BVCPS only had one employee stationed in Illinois and one Illinois resident stationed overseas at the time of this lawsuit's filing. Even though one employee was the corporation's president and director, he had been stationed overseas for more than five years. The other employee is an information systems technician who has no contact with customers. And "the presence of a service representative" cannot "ordinarily confer jurisdiction

over the corporation as to matters unrelated to those activities." *Palmer*, 644 F. Supp. at 331. Further, as a matter of fundamental fairness, BVCPS could not reasonably expect that, by employing one Illinois resident as a technician, it was exposing itself to defending in Illinois any claim from any party who filed suit in the State. Moreover, because BVCPS has over 100 facilities worldwide that must be staffed by employees, two Illinois employees constitute a small percentage of BVCPS' total employees.

Third, while BVCPS does conduct business in Illinois, it transacts only a small percentage of its overall business in the State. It is true that BVCPS filed form BCA 13.15 so that it could transact business in Illinois, solicits business in Illinois, owns imaging equipment in Downers Grove, Illinois, tests products manufactured in Illinois, and inspects products and performs factory assessments in Illinois. But, as the Supreme Court cautioned in *Daimler*, "[n]othing in *International Shoe* and its progeny suggests that a particular quantum of local activity should give a State authority over a far larger quantum of . . . activity having no connection to any in-state activity." *Daimler*, 134 S. Ct. at 762 n.20 (citations and internal quotation marks omitted). And the Seventh Circuit held that, even when a company had "hundreds of thousands" of Illinois customers that "delivered many millions of dollars in revenue" to the company, the company did not have sufficient contacts with Illinois to satisfy the "demanding" general jurisdiction standard. *uBid*, 623 F.3d at 424, 426. Here, BVCPS conducted a small quantum of its overall activities in Illinois. During the first seven months of 2014, BVCPS conducted 0.39% of all of the inspections it performed and 3.33% of all of the factory assessments it performed in Illinois. And Illinois clients generated just 4.1% of BVCPS' total revenue for the first five months of 2014. Therefore, BVCPS' activities appear to be even less

than those found insufficient in *uBid*, and BVCPS conducts a far larger quantum of activities outside of Illinois than inside it.

Finally, while BVCPS is identified as doing business on several public websites that are accessible in Illinois, as well as worldwide, these websites primarily provide information about the company. The Seventh Circuit has consistently held that "the maintenance of a public Internet website" is not "sufficient, without more, to establish general jurisdiction." *Tamburo*, 601 F.3d at 701. And "limited contacts . . . through the Internet do not make defendants essentially at home in the state and subject to general personal jurisdiction." *Snodgrass v. Berklee Coll. of Music*, 559 F. App'x 541, 542 (7th Cir. 2014). As a result, courts could not exercise general jurisdiction over a "web-based company which earned millions of dollars annually from Illinois customers and deliberately and successfully exploited [the] Illinois market" and a "company which utilized multiple interactive websites to market cigarettes that were sold and shipped to Illinois customers." *Snodgrass*, 559 F. App'x at 543 (citing *uBid*, 623 F.3d at 426-29; *Illinois v. Hemi Group LLC,* 622 F.3d 754, 757-59 (7th Cir. 2010)). Unlike those websites, the websites in question here are primarily designed to provide information about BVCPS' services and do not specifically target Illinois. As a matter of fact, BVCPS does not advertise its services specifically in Illinois through its website, or any other medium. Accordingly, BVCPS utilized its website as a means of doing business in Illinois to a lesser degree than the companies in both *uBid* and *Hemi Group*. Just as in those cases, then, BVCPS' website does not make it essentially at home in Illinois.

Ultimately, despite BVCPS' having significant contacts with Illinois as of the date of the filing of this suit, these contacts cannot satisfy the high general jurisdiction standard because this court must assess the entirety of BVCPS' activities—not just the magnitude of its contacts with

Illinois. BVCPS conducts business worldwide and has well over 100 offices and laboratories worldwide. It has no physical presence or office in Illinois. It has only one agent for the service of process in Illinois and two Illinois residents in its employ: one has no contact with customers; the other has been stationed overseas for years. It acquired less than 5% of its total revenues from Illinois clients. And the public websites identifying BVCPS as doing business in Illinois are primarily designed to provide information about the company and do not specifically target Illinois. Accordingly, BVCPS activities in Illinois, when viewed in light of its out-of-forum activities, are not sufficiently systematic and continuous as to render it at home in Illinois, which precludes this court from exercising general personal jurisdiction.

Moreover, because no special rule applies when torts are involved, BVCPS never purposefully directed claims-related activities at Illinois nor purposefully availed itself of the privilege of conducting business in Illinois, and no claims-related conduct connects BVCPS to Illinois, this court cannot exercise specific personal jurisdiction over BVCPS.

Consequently, this court lacks personal jurisdiction over BVCPS, and BVCPS must be dismissed from this action.

IT IS THEREFORE ORDERED THAT:

(1) BVCPS' Motion to Dismiss Plaintiff's Amended Complaint (#6) is GRANTED.
(2) BVCPS is terminated as a party in this action.
(3) This case is referred to Magistrate Judge David G. Bernthal for further proceedings.

ENTERED this 8th day of December, 2014

s/COLIN S. BRUCE
U.S. DISTRICT JUDGE